UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 0 2 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-13-GWU

BLANCHE SAYLOR,                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

### INTRODUCTION

Blanche Saylor filed her original application for Supplemental Security Income (SSI) in April, 1993, which was denied by an Administrative Law Judge (ALJ) on March 31, 1995, and became administratively final when the Appeals Council declined to review. (Tr. 13). She filed a second application on October 8, 1996 (Tr. 67-9) alleging disability due to incontinence, nerves, depression, poor sleep, and "fear." (Tr 70). This application was also denied through the level of the Appeals Council, and the plaintiff appealed to this Court. After a period of reconsideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of July 20, 2001 (Tr. 430-41), and the consolidation of another SSI application on June 5, 2000 (Tr. 595-7) which also alleged heart problems, emphysema, dizziness, and chronic fatigue (Tr. 605), a partially favorable decision was entered at the administrative level. The unfavorable portion of the case was

1

Saylor

appealed to the federal court, and is before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Crouch</u>, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the

Saylor

basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

3

Saylor

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, the ALJ obtained additional evidence from medical and psychological consultants, treating sources, and medical experts (MEs). She concluded that there were four distinct time periods relevant to the plaintiff's claims.

4

Saylor

From April 1, 1995 to April 30, 1999 (the "first period"), the plaintiff was capable of
"light" level exertion, with additional non-exertional impairments; from May 1, 1999
to December 31, 1999 (the "second period"), she was not capable of sustained work
activity at the sedentary level, but was not entitled to benefits for durational reasons;
from January 1, 2000 to her 50th birthday on January 24, 2001 (the "third period"),
she was capable of sedentary level exertion with additional non-exertional
restrictions; and ,as of the plaintiff's 50th birthday on January 24, 2001 (the "fourth
period"), she was disabled under the Commissioner's Medical-Vocational Rule
201.14, applicable to individual of the plaintiff's age, and education, and work
experience who is restricted to sedentary level exertion. (Tr. 397-8). The Appeals
Council declined to review, and the plaintiff has appealed the unfavorable portions
of the administrative decision.

At the current administrative hearing, the ALJ had asked a series of
hypothetical questions to a vocational expert (VE). For the first period, the VE was
asked to assume a person of the plaintiff's age, education, and work experience
who was capable of "light" level exertion, who required a sit/stand option so that she
need not stand longer than 15 minutes at a time or sit longer than one hour at a
time, could perform only occasional bending, and who had a "limited but
satisfactory" ability to deal with work stresses and maintain attention and
concentration. (Tr. 1081). The VE responded that such a person could perform the

plaintiff's past job as a companion and, in the alternative, named other jobs that the person could perform, along with the numbers in which they existed in the state and national economies. (Tr. 1081-2). For the second period, the ALJ had already concluded that the plaintiff could not perform full-time work. For the third period, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "sedentary" level exertion, could sit for six hours a day, stand or walk for two hours a day, could occasionally climb stairs, could have no exposure to temperature extremes or even moderate exposure to high humidity, and had a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain attention and concentration, understand, remember, and carry out simple tasks in an object-focused setting, and was precluded from work that required any contact with the general public or work that required and ability to withstand more than relatively low stresses. (Tr. 1082-3). The VE responded that there were jobs that such a person could perform, and also gave the numbers in which they existed in the state and national economies. (Tr. 1083).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The Court's concern in the 2001 remand was that hypothetical psychological factors given by a state agency reviewer, particularly the areas of performing at a

consistent pace, completing a normal workday and workweek without interruptions from psychological symptoms, and relating to co-workers, were not fully considered by the ALJ or by the vocational expert (VE). (Tr. 439-41). The new decision only partially addresses the reasons for the remand, however. While the ALJ concluded that for the "first period" (prior to May 1999) the plaintiff would have a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, and maintain attention and concentration, could understand, remember, and carry out simple tasks in an object focused setting, and was precluded from any work requiring contact with the general public or more than relatively low stresses (Tr. 397), as noted above, the hypothetical question to the VE included only restrictions to a "limited but satisfactory" ability to deal with work stresses and maintain attention and concentration (Tr. 1081). Therefore, the hypothetical question was not consistent with the ALJ's own residual functional capacity conclusions for the first period, and a remand will be required in order to obtain additional vocational testimony on this point.[1]

The hypothetical question given in connection with the "third period" does include all the restrictions found by the ALJ, and is supported by new evidence

---

[1]While it could be argued that the hypothetical restrictions are consistent with the 2002 conclusions of Dr. Rigby, discussed infra, the ALJ found greater restrictions for the first period in the hearing decision, and given that the case had been remanded by the undersigned specifically because of the failure to properly consider mental restrictions, the omission of these limitations from the hypothetical question is inexplicable.

Saylor

obtained on remand.  The new evidence included a consultative psychological evaluation by Dr. William Rigby on July 25, 2002 at which he diagnosed dysthymia, an anxiety disorder, and borderline intellectual functioning, and completed a mental residual functional capacity assessment finding that the plaintiff had no less than a "limited but satisfactory" ability to deal with work stresses and understand, remember, and carry out complex and detailed job instructions.  (Tr. 864-7).  In every other category, her ability to function was higher.[2]  The restrictions found by Dr. Rigby are not clearly inconsistent with the findings of the plaintiff's treating sources at the Comprehensive Care Center (CCC), which diagnosed dysthymia, an anxiety disorder, and a histrionic personality disorder, and generally gave Global Assessment of Functioning (GAF) scores of 60.  (E.g. Tr. 490, 455, 448, 748, 785, 881).  A GAF score of 60 is at the upper end of the range of "moderate" symptoms.  Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34.[3]   The state agency also obtained Minnesota Multiphasic

------

[2]Dr. Rigby also obtained in eighth-grade reading ability on formal testing, but only a second-grade spelling and third-grade arithmetic ability, but he questioned the plaintiff's effort in the latter two tests.  (Tr. 863).  The plaintiff has not raised the issue of educational level on appeal.

[3]A psychological ME testified at the most recent administrative hearing there was no reason a person with a GAF in the 60s could not work as a result of emotional problems. (Tr. 1024).

Saylor

Personality Inventory (MMPI) testing by psychologist Dennis Spjut, which was interpreted most likely as showing symptom exaggeration. (Tr. 878-9).

Given the new evidence, and the fact that the restrictions described in the hypothetical question was consistent with the opinion of Dr. Rigby, an examining source, and that none of the other evidence is clearly inconsistent with his conclusions, substantial evidence supports the ALJ's choice of mental hypothetical factors for the third period. Nor does the plaintiff specifically challenge any of the psychological findings on appeal. Therefore, the ALJ's determination that the plaintiff was not disabled in the third period is supported by substantial evidence.

The plaintiff's focus on appeal is whether her heart condition met the Commissioner's Listing of Impairment (LOI) 4.02B, for "chronic heart failure," based on an echocardiogram following May 30, 1999 heart surgery, which showed an ejection fraction of 25-30 percent. (Tr. 651, 663). The Listing requires, in pertinent part:

> Documented cardiac enlargement ....or ventricular dysfunction manifested by...left ventricular ejection fraction of 30 percent or less by appropriate imaging techniques; and
> 1. Inability to perform on an exercise test at a workload equivalent to 5 METs or less due to symptoms of chronic heart failure, or, in rare instances, a need to stop exercise testing at less than this level of work because of:
> a. Three or more consecutive ventricular premature beats or three or more multiform beats; or
> b. Failure to increase systolic blood pressure by 10 mmHg, or decrease in systolic pressure below the usual resting level...; or
> c. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion; and

9

Saylor

> 2. Resulting in marked limitation of physical activity, as demonstrated by
> fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical
> activity, even though the individual is comfortable at rest...

20 C.F.R. Pt. 404, Subpt. P, App.1, Section 4.02B (emphasis added).

The Commissioner argues that the plaintiff clearly did not meet every one of the criteria in the Listing, and therefore her argument should be dismissed. The plaintiff's argument is based, however, on the opinion of a State agency reviewer, Dr. Gary Higgason, who concluded in October, 2000 that her condition equaled LOI 4.02B. (Tr. 800-1). As noted in Social Security Ruling 83-19, equivalency can be found "for a listed impairment for which one or more of the specified medical findings is missing from the evidence but for which other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence." Social Security Ruling 83-19, p. 5. The Ruling also states that "[d]ecisions on equivalence are the responsibility of a physician designated by the Secretary [now the Commissioner]" and [i]n most instances, the designated physician is a physician in the State agency." Id., p. 7. All of this certainly applies to Dr. Higgason. Crucially for the plaintiff, however, Dr. Higgason subsequently modified his opinion after reviewing the results of a stress test conducted by Dr. Byron Westerfield on November 16, 2000, at which the plaintiff acheived only 3 METs and terminated the test due to fatigue. (Tr. 734). Dr. Westerfield had

10

commented that the test was terminated "at a submaximal level"but, possibly in reference to the plaintiff's statements that she was walking 30 to 40 minutes every day, concluded that she appeared to have sustained a "mild" injury and had good results from her cardiovascular surgery and should be "able to perform her usual level of activities." (Tr. 731, 733). Dr. Higgason, responding to a request from the state agency (Tr. 832), recited the new evidence and emphasized the fact that there were no ischemic changes or arrhythmias on the stress test. (Tr. 830). He completed a functional capacity assessment limiting the plaintiff to "light" level exertion, with occasional climbing and a need to avoid concentrated exposure to extreme cold and heat. (Tr. 822-9). Implicitly, preparing a functional capacity assessment was an admission by Dr. Higgason that he no longer considered the Listing to be equaled.

The plaintiff also cites the testimony of an ME, Dr. Edward Griffin, a specialist in internal medicine. (Tr. 1037).[4]  Dr. Griffin, after reviewing all the evidence, concluded that the plaintiff should be capable of a full range of sedentary level work with occasional climbing stairs and no exposure to temperature extremes, following her cardiac surgery. (Tr. 1044). He testified that, while an ejection fraction of 30 percent would be at "Listing level," the plaintiff had had limited follow-up and it

---

[4]"A medical advisor at a hearing...may also make the physician's decision in the determination of medical equivalence." SSR 83-19, p. 7.

Saylor

would be reasonable to expect the ejection fraction to improve following surgery. (Tr. 1039-40). He also testified that there was no evidence of decompensation, which would be expected if the ejection fraction had not improved, and that a permanent ejection fraction of 30 percent would make it unlikely that the plaintiff could walk for several miles a day. (Tr. 1040, 1042). In summary, he specifically testified that the record did not support the plaintiff continually meeting LOI 4.02. (Tr. 1040). The plaintiff argues that too much of Dr. Griffin's testimony was based on speculation, rather than evidence, but has presented no evidence from a medical source to contradict his conclusion that the plaintiff would not continuously meet LOI 4.02. Therefore her argument is without merit.

The Court concludes that a remand will be required for additional vocational testimony based on all of the mental restrictions for the first period (i.e., April 1, 1995 to April 30, 1999.

This the _____2_____ day of August, 2006.

G. WIX UNTHANK,
Senior Judge

12